## Louis Olcese, Appellee, v. Val Blatz Brewing Company, Appellant.

### Gen. No. 13,977.

1. LANDLORD AND TENANT—*liability for rent of assignee of latter.* While at common law and under the decisions of the English courts, an assignee in virtue of a mortgage would be liable to pay rent to the lessor in the assigned lease, regardless of the fact of actual entry having been made into the demised premises, or possession thereof taken, yet that doctrine has been somewhat relaxed in this country, for while the mortgagee is out of possession the mortgagor for every substantial purpose is regarded as the real owner, and the mortgagee not treated as a real assignee. However, after entry the possession thus obtained by the mortgagee subjects him to that privity of estate with the landlord which imposes upon him the obligation to pay rent in accord with the terms of the lease assigned by the covenants of the mortgage.

2. INSTRUCTIONS—*approved form of, as to when chattel mortgage operates as assignment of lease.* The following form of instruction upon this subject approved:

"The jury are instructed that if they believe from the evidence that the plaintiff, Louis Olcese, made a lease of the premises to Edward Kelly, and that Edward Kelly executed and delivered a chattel mortgage, which by its terms included the lease of the premises in question to Val Blatz Brewing Company, and that thereafter Val Blatz Brewing Company paid rent of the premises in accordance with the terms of the lease of the premises to said Edward Kelly, then such chattel mortgage operated as an assignment of the lease to the Val Blatz Brewing Company and the Val Blatz Brewing Company became liable for the payment of rent in accordance with the terms of the lease."

Trespass on the case. Appeal from the County Court of Cook county; the Hon. DAVID T. SMILEY, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed November 12, 1908.

**Statement by the Court.** Plaintiff in this action seeks to recover rent of the premises 7 Dearborn street, Chicago, from defendant as the assignee of Edward Kelly. The lease was in writing, under seal, and contained a covenant against assignment without the consent of the landlord. The term commenced November 4, 1902, and was to end April 30, 1908. On March 28, 1905, Kelly, being in arrears of rent and indebted to defendant, made a chattel mortgage to defendant conveying a saloon license, certain personal property, consisting of saloon fixtures in the leased premises, and also by the conditions of the chattel mortgage assigned the lease to defendant as security for its debt. Kelly quit the premises about April 20, 1905, and procured from plaintiff a consent in writing to sublet the premises or transfer the lease to any "respectable party". After Kelly went out of possession, the lease with the consent to sublet or assign was given to and remained with defendant, and defendant paid the past-due rent, amounting to $288.33, and a further payment, on account of rent subsequently accruing, of $266.67. The receipts run to Kelly, but were given to defendant, who retained them in its possession. One Merslak conducted the saloon business in his own name from the time Kelly moved out until defendant foreclosed the Kelly chattel mortgage. The rent so paid, defendant contends, was received by it from Kelly and Merslak, and that in paying the same to plaintiff they were acting as agents only. The premises were subsequently closed and defendant took steps to foreclose the Kelly mortgage, and on June 1, 1905, removed the mortgaged saloon property from the demised premises. Plaintiff re-rented the premises July 14, 1905, and claims rent for the months of April, May, June and one-half of July, 1905, amounting to $700, for which he recovered judgment in the County Court. At the close of plaintiff's case, and again at the close of all the proofs, defendant moved the court to instruct a verdict in its

favor, both of which motions were denied and exceptions duly preserved. Motions for a new trial and in arrest of judgment having been made and denied, defendant duly excepted and prayed an appeal to this court, which was allowed and perfected.

WINSTON, PAYNE, STRAWN & SHAW, for appellant; EDWARD W. EVERETT and GARRARD B. WINSTON, of counsel.

ILES & MARTIN, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

It was assigned for error and argued that there is a fatal variance between the averments of the declaration and the proof, in the rulings of the court in the admission and rejection of evidence, and in the giving and refusal of certain instructions to the jury upon the law.

We think the jury were justified from the evidence in concluding that the defendant took actual possession of the premises under the assignment of the lease to it in the Kelly chattel mortgage, and that such possession was taken through Merslak, who held possession for the defendant until the physical foreclosure of the Kelly chattel mortgage occurred June 1, 1905. The fact that when Kelly made the chattel mortgage he delivered with it the lease of the premises, and that defendant in fact paid directly several months rent to plaintiff, taking and retaining the receipts therefor, and also took and retained the written consent of plaintiff to the assignment of the lease, and the further fact that Merslak paid money from the saloon business to defendant during the time he had charge of that business, are all inconsistent with the claim by defendant that it acted in all these matters merely as the agent of Kelly and Merslak. The lease, while it remained in the possession of defendant, was not

assigned, except as the covenant in the chattel mortgage worked an assignment of it to defendant. There was no other assignment made by Kelly to defendant and no pretense of an assignment to Merslak. Neither Kelly nor Merslak were produced as witnesses by defendant to explain, if explanation were possible, their relations to defendant in an effort to show that they were contrary or different from that arising from the admitted dealings of defendant with plaintiff and the leased premises. There is nothing in the proofs from which an inference should be indulged that either Kelly or Merslak were hostile to defendant. The matters alleged by defendant were in the nature of defenses to plaintiff's claim, the burden of sustaining which rested upon defendant. The admission of Meyer that defendant was good for the rent was made at a time when its liability therefor was asserted and his admission must be construed with that fact in mind. He made it as the representative of defendant in a matter impliedly entrusted to him as its manager, in the usual course of defendant's business.

Whether the assignment of the lease under the conditions of the Kelly chattel mortgage followed by the continued possession of the lease, otherwise unassigned, was sufficient to fasten upon defendant liability to pay the rent reserved by the lease without the taking of possession of the demised premises, is not of the essence of the right of plaintiff to maintain this judgment, in view of the fact that defendant did take possession through Merslak and did pay rent in accordance with the terms of the lease. While at common law and under the decisions of the English courts, an assignee in virtue of a mortgage would be liable to pay rent to the lessor in the assigned lease, regardless of the fact of actual entry having been made into the demised premises, or possession thereof taken, yet that doctrine has been somewhat relaxed in this country, for while the mortgagee is out of possession the mortgagor for every substantial purpose

is regarded as the real owner, and the mortgagee not treated as a real assignee. However, after entry the possession thus obtained by the mortgagee subjects him to that privity of estate with the landlord which imposes upon him the obligation to pay rent in accord with the terms of the lease assigned by the covenants of the mortgage.

There are no decisions in this state announcing a contrary doctrine. Babcock v. Scoville, 56 Ill. 461, was not the case of assignment by mortgage, but an assignment direct of the lease itself. The question there was the liability of the assignees, who had not taken possession of the leased premises, for the rent. It was contended on the part of the assignees that they were not liable and could not be held liable, because they had not gone into possession. On the part of the lessor it was contended that the assignment being of the whole estate under the lease, nothing being reserved by the assignment to the lessee, it did not require possession to create a privity of estate between the lessor and the assignee; and the court say in the Babcock case, *supra*: "With this much of authority in support of the doctrine, laying out of view the case of an assignee by operation of law, so far as has come under our examination we do not find it elsewhere laid down in any reported case, or by any legal writer of approved authority, that, in case of an absolute assignee in fact of a term of years, an entry by the assignee is necessary in order to subject him to a liability for the rent, but the whole tenor of authority is to the contrary". However, the exact principle enunciated in the Babcock case is not precisely the same as the one now before us, because we hold that defendant both entered into possession and attorned by the payment of rent under the terms of the assigned lease—elements entirely lacking in the Babcock case. The only significance arising here is in relation to its application to the first instruction

and the error assigned to its giving, which we will hereafter refer to.

We are unable to discover any substantial variance between the averments of the declaration and the material evidence adduced in support of them. Some of the averments concern the assignment of the lease in virtue of the terms of the Kelly chattel mortgage to defendant and the entry into possession by the defendant, and that the rent claimed was due and unpaid. The averments that the making of the lease by plaintiff to Kelly, its assignment by means of the chattel mortgage given by Kelly to defendant, the entry into possession of the leased premises by defendant through Merslak, attorning to plaintiff by payment of rent, and that the amount recovered was rent due under the terms of the assigned lease, find ample support in the evidence. An examination of the evidence rejected by the trial court discloses that it was in the nature of hearsay testimony, conclusions of the witnesses interrogated and of matters immaterial to the issues, such as whether or not the leasehold interest conveyed by the chattel mortgage was sold at the time of the foreclosure sale of the saloon fixtures. The mortgage conveying the leasehold interest with possession in and payment of rent by defendant, all of which occurred some time prior to the foreclosure sale, was a sufficient appropriation of the lease, and as to it a foreclosure of the mortgage. The usual covenant to sell with or without notice, at public or private sale, being in this mortgage what was sold after the seizure of the saloon fixtures June 1, 1905, did not affect or change what had already been done about the lease.

It is ably argued with much apparent confidence that the giving of the following instruction was reversible error:

"The jury are instructed that if they believe from the evidence that the plaintiff, Louis Olcese, made a lease of the premises to Edward Kelly, and that Ed-

ward Kelly executed and delivered a chattel mortgage, which by its terms included the lease of the premises in question to Val. Blatz Brewing Company, and that thereafter Val. Blatz Brewing Company paid rent of the premises in accordance with the terms of the lease of the premises to said Edward Kelly, then such chattel mortgage operated as an assignment of the lease to the Val. Blatz Brewing Company and the Val. Blatz Brewing Company became liable for the payment of rent in accordance with the terms of the lease''.

This instruction did not necessarily exclude from the jury the consideration of the fact that possession by defendant under the assignment in the chattel mortgage of the lease was an essential element to charge defendant with liability for rent. The payment of rent by defendant was an attornment to plaintiff as landlord, paid, at least inferentially, while defendant was in possession; still, should it be conceded that this instruction did not contain the element of possession at all, it is clear that nothing was stated in it to the contrary, so that any omission of this character was amply supplied by instructions given at the request of defendant, in which the jury were informed that if they found from the evidence that the defendant did not accept the assignment of the lease and did not become the tenant of plaintiff, there could be no recovery. Furthermore, all the law applicable to the several phases of the defense which the defendant requested by instructions were given to the jury, with the exception of one, in which the claim of agency in the payment of rent by defendant was asked to be submitted to the jury, and in which it was laid down that if the rent was paid by defendant as agent there could be no recovery. There was no evidence to which such instruction had any application, and it was therefore properly refused. The instructions must be taken and read as a whole, and in so doing it appears that the jury were fairly and sufficiently in-

structed on the law of the case and upon every point requested favorable to the defense.

Upon the whole record substantial justice appears to have been done upon the merits, and as said in Lebanon Coal & Machine Ass'n v. Zerwick, 77 Ill. App. 486: "Where upon the whole case substantial justice has been done, erroneous instructions will not reverse, and where one or more instructions are erroneous and others state the law correctly and the verdict returned is strongly supported by the evidence and clearly right and just, the presumption usually prevails that upon the whole the jury was not misled as to the law".

The most that can be said about the first instruction is that it did not go quite far enough; but even so, what it lacked was supplied in the instructions given at the instance of defendant.

Finding no error in this record warranting a reversal of the judgment of the County Court, it is consequently affirmed.

*Affirmed.*